UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KARI ANN MOON,

                Plaintiff,

     v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

                Defendant.

CASE NO. C14-5647 BHS

ORDER REVERSING AND REMANDING

## I. BASIC DATA

Type of Benefits Sought:

    (  ) Disability Insurance

    (X) Supplemental Security Income

Plaintiff's:

    Sex: Female

    Age: 36 on date application filed

Principal Disabilities Alleged by Plaintiff: Fibromyalgia, degenerative disc disease, wrist impairment, hypothyroidism, bipolar disorder, post-traumatic stress disorder, and anxiety disorder.

Disability Allegedly Began: July 22, 2009

Principal Previous Work Experience: Unskilled

Education Level Achieved by Plaintiff: At least high school

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before ALJ Verrell Dethloff:

    Date of Hearing: June 5, 2013, hearing transcript AR 48–82

    Date of Decision: July 5, 3013

    Appears in Record at: AR 17–41

    Summary of Decision:

        Claimant has not engaged in substantial gainful activity since her alleged onset date. She has severe impairments of fibromyalgia, thyroid disorder, degenerative disc disease of the cervical spine, status post fusion, affective disorder, anxiety disorder, personality disorder, and somatoform disorder. Her impairments, even in combination, do not qualify under the Listings.

        Claimant has the residual functioning capacity to perform light work. She can sit, stand, and/or walk for six hours in an eight hour workday in any combination. She can lift and/or carry twenty pounds frequently and ten pounds occasionally. She can occasionally climb ladders. She is limited in left overhead reaching to frequent and is limited in handling with the right dominant hand to frequent. She is also limited to simple and detailed tasks with superficial interaction with the public and coworkers.

        Claimant cannot perform any of her past relevant work. The vocational expert testified that claimant can perform the following jobs: assembler, sorter, addresser, and surveillance system monitor. Based on the vocational expert's testimony, claimant can perform substantial work that exists in the national economy. A finding of "not disabled" is therefore appropriate.

Before Appeals Council:

    Date of Decision: June 20, 2014

    Appears in Record at: AR 1–5

    Summary of Decision: Declined review

# III. PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

# IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

# V. EVALUATING DISABILITY

The claimant, Kari Moon ("Moon"), bears the burden of proving she is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any

substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, the burden shifts to the Commissioner.  *Id.*

## VI. ISSUES ON APPEAL

1. Did the ALJ err in assessing medical evidence?
2. Did the ALJ err in assessing lay witness testimony?

## VII. DISCUSSION

**A.   Dr. Cline's Opinion**

Moon argues that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Cline's opinion.  Dkt. 13 at 4.

"A treating physician's opinion is entitled to 'substantial weight.'"  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  When the evidence in the record contradicts the treating physician's opinion, the ALJ must give "specific and

legitimate reasons supported by substantial evidence in the record" for discounting the opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (internal quotation marks omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

In August 2011, Dr. Cline examined Moon and diagnosed her with a mood disorder, an anxiety disorder, and a possible borderline personality disorder. AR 390. Dr. Cline found that Moon would have moderate problems performing tasks even with simple instructions. *Id.* Dr. Cline also determined that Moon would have moderate difficulty communicating and performing effectively in a work setting even with limited public contact. AR 391.

The ALJ gave little weight to Dr. Cline's opinion regarding Moon's cognitive and social limitations. AR 34. The ALJ found that Dr. Cline "largely based her opinions on [Moon's] self-reports without the benefit of reviewing all of her medical records available at the time, which would have showed improved mental health symptoms with medication." *Id.*

The ALJ did not provide specific and legitimate reasons for rejecting Dr. Cline's opinion. First, Dr. Cline did not indicate that her opinions were based on Moon's self-reports. Instead, Dr. Cline supported her opinions with objective findings and her own observations. For example, Dr. Cline noted that Moon could not complete serial subtractions without errors and had difficulties with digit span. AR 390. Dr. Cline observed that Moon's answers to questions were delayed. *Id.* Dr. Cline also noted that

Moon was "very difficult to focus and keep on topic during the interview." AR 391. Finally, Dr. Cline conducted a Rey test to ensure that Moon was not malingering. *Id.* Thus, the ALJ's first reason for rejecting Dr. Cline's opinion is insufficient.

The ALJ's second reason for rejecting Dr. Cline's opinion is also insufficient. Although the ALJ indicated that Moon's medical records showed improvement, the ALJ relied on records six months prior to Dr. Cline's examination in August 2011. AR 34 (citing AR 401). Medical evaluations from July 2011 and December 2011 discuss limitations similar to those that Dr. Cline found. *Compare* AR 397, 518, 522, *with* AR 390–91. The Court therefore concludes that the ALJ erred when he rejected Dr. Cline's opinion regarding Moon's cognitive and social limitations.

**B.     Dr. Neims's Opinion**

Next, Moon argues that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Neims's opinion. Dkt. 13 at 9.

In December 2011, Dr. Neims examined Moon and diagnosed her with chronic PTSD, anxiety disorder, pain disorder, and borderline personality disorder. AR 514. Dr. Neims found that Moon would have moderate limitations communicating and performing effectively in a normal work setting. AR 515. Dr. Neims also noted that Moon would have marked limitations maintaining appropriate behavior in a work setting. *Id.*

The ALJ provided a number of reasons for rejecting Dr. Neims's opinion. AR 33–34. First, the ALJ found that "the severity of [Moon's] cognitive limitations is inconsistent with a number of mental status exams and her ability to attend college online." AR 33. This reason is neither legitimate nor supported by substantial evidence

in the record. As a preliminary matter, Dr. Neims's opinion regarding Moon's cognitive limitations is consistent with Dr. Cline's opinion and medical testing. Additionally, Dr. Neims examined Moon in December 2011. Moon, however, withdrew from college in early 2011 and did not return. AR 458. Evidence in the record indicates that Moon experienced confusion, tangentiality, and other similar problems after she stopped attending school. AR 391, 397, 733, 741, 742, 743.

Next, the ALJ noted that Dr. Neims "described the claimant as friendly and cooperative, [which is] inconsistent with marked limitations in social functioning." AR 33. This reason is not legitimate in light of the evidence in the record. Dr. Neims made several other observations about Moon's functioning in his report. For example, Dr. Neims noted that Moon was rambling, required frequent redirection, and was somewhat disorganized. AR 518. These observations support Dr. Neims's opinion regarding Moon's social functioning.

The ALJ also stated that Dr. Neims "had no records to review to obtain an accurate longitudinal record of her functioning and relied in large part on [Moon's] self-reported symptoms while [Moon] is not entirely credible." AR 34. This reason is neither legitimate nor supported by substantial evidence. Dr. Neims's report indicates that he relied on a mental status examination and observations of Moon to reach his conclusions. *See* AR 515, 518, 526–28. In the mental status exam, Dr. Neims noted abnormalities in Moon's motor activity, speech, affect, memory, and thought processes. AR 522–24. These findings support Dr. Neims's conclusions regarding Moon's cognitive and social limitations.

1    Finally, the ALJ found that Dr. Neims "failed to sufficiently consider whether
2 [Moon] was exaggerating . . . ." AR 34.  Dr. Neims, however, considered whether Moon
3 was exaggerating when he noted that malingering was not suspected.  AR 519.
4    For these reasons, the Court finds that the ALJ erred when he rejected Dr. Neims's
5 opinion.

**C.    Dr. Covell's Opinion**

Moon also contends that the ALJ erred when he did not include all of the limitations assessed by Dr. Covell, a reviewing medical consultant, in the hypothetical question to the vocational expert.  Dkt. 13 at 11.

"Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "If a vocational expert's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (internal quotation marks omitted).

In April 2012, Dr. Covell completed a mental residual functional capacity assessment of Moon.  Dr. Covell concluded that Moon was capable of superficial interactions with the public and a few co-workers.  Although the ALJ stated that he gave significant weight to Dr. Covell's opinion, the ALJ did not adopt Dr. Covell's opinion that Moon could interact with only a few coworkers.  AR 35, 76, 112.  The ALJ did not explain why he failed to include this limitation in the hypothetical question to the vocational expert.

The Government concedes that the ALJ erred, but argues that this error was harmless. Dkt. 14 at 7. The Court disagrees. The ALJ did not incorporate Dr. Covell's opinion that Moon was capable of superficial interactions with few co-workers in the hypothetical question. Because the hypothetical question did not include all of Moon's assessed limitations, the vocational expert's testimony cannot support a finding that Moon can perform jobs in the national economy. *See Matthews*, 10 F.3d at 680. The Commissioner therefore failed to meet her burden at step five of the analysis, and this error cannot be deemed harmless.

**D.    Chris Dague's Testimony**

Finally, Moon argues that the ALJ did not provide germane reasons for rejecting statements from her boyfriend and roommate, Chris Dague ("Dague"). Dkt. 13 at 13.

Lay witness testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite to the specific record as long as "arguably germane reasons" for dismissing the testimony are noted and substantial evidence supports the ALJ's decision. *Id.* at 512.

In his statement, Dague described Moon as having significant pain with functioning as well as difficulty focusing. AR 266. The ALJ rejected Dague's testimony for the same reasons he found Moon's testimony not credible to establish disability. AR 37. The ALJ also rejected Dague's testimony because he "described [Moon] as engaging in multiple chores and working on different tasks." *Id.*

The ALJ did not provide germane reasons for rejecting Dague's statements.  The ALJ rejected Moon's testimony because she gave a number of inconsistent reports, had not quit smoking, had been charged with shoplifting, was motivated by secondary gain to obtain benefits, and engaged in histrionic and exaggerated behavior at the hearing.  AR 27–29.  These reasons, however, do not apply equally to Dague's testimony.

Moreover, Dague's statement about Moon engaging in multiple chores and working on different tasks is consistent with his report that Moon had difficulty focusing and completing tasks.  *See* AR 266 ("[Moon] has a hard time staying focused on tasks also.  She tries to clean around the house and when she starts one chore, she often gets distracted and starts another without even finishing the first.").  The Court therefore concludes that the ALJ erred when he rejected Dague's testimony.

**E.     Remand**

For the foregoing reasons, the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings.  On remand, the ALJ should reevaluate the opinions of Dr. Cline, Dr. Neims, and Dr. Covell.  The ALJ should also reevaluate the lay witness testimony of Dague.

## VIII. ORDER

Therefore, it is hereby **ORDERED** that the Commissioner's final decision denying Moon disability benefits is **REVERSED** and the matter is **REMANDED** for further proceedings consistent with this order.

Dated this 16th day of March, 2015.

*/s/ Benjamin H. Settle*
BENJAMIN H. SETTLE
United States District Judge